IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

SCOTT CAREY,

    Plaintiff

v.

MARK MATTHEWS,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Plaintiff, Scott Carey, by and through his attorneys at the Civil Rights Litigation Group, PLLC, hereby submits this Complaint and Jury Demand, and alleges as follows:

**INTRODUCTION**

1. This is a civil rights action, brought under federal and state law, for the false arrest and wrongful prosecution of plaintiff Scott Carey. Mr. Carey was falsely charged by the defendant officer with stealing a commercial truck based on nothing more than an isolated and innocent fingerprint and a misrepresentation regarding his criminal background. In reality, Mr. Carey had nothing to do with the theft of the vehicle and only touched the truck for innocent reasons. But the investigating officer never contacted him, never offered him an opportunity to explain, ignored exculpatory information, and never obtained any information that genuinely implicated Mr. Carey in any crime. Imagine touching another vehicle for a completely innocent

reason—such as walking by in a parking lot—and then finding out you have been accused of stealing that very vehicle. That is what happened to Mr. Carey.

2. In truth, Mr. Carey's fingerprint was allegedly found on the door to a tool compartment that was separate and disconnected from the cab of the truck. Mr. Carey's fingerprints were not found anywhere inside the cab of the truck. In fact, other people's fingerprints were found inside and around the truck, and a witness to the theft identified a man who looked nothing like Mr. Carey as the thief. Defendant Mathews ignored this exculpatory information and failed to investigate or pursue the true criminal. When he drafted the affidavit for Mr. Carey's arrest, defendant Matthews misleadingly made it sound like Mr. Carey's fingerprint was found in a location consistent with operation of the vehicle. Defendant Matthews knowingly omitted from his affidavit that a fingerprint found on the inside of the driver's door to the passenger compartment did not match Mr. Carey—nor did several other fingerprints found on the vehicle. Defendant Matthews also knowingly omitted from his affidavit that the truck he accused Mr. Carey of stealing was seen being driven by a completely different person who looked nothing like Mr. Carey. Defendant Matthews also misrepresented Mr. Carey's criminal background by making it sound like Mr. Carey was a serial criminal and car thief when, in truth, Mr. Carey had not been in trouble with the law for a decade.

3. Mr. Carey was arrested and charged by surprise based on the faulty warrant obtained by Defendant Matthews. He had to spend six days in jail without bond and several months being prosecuted before the case was dismissed. Mr. Carey seeks justice for the loss of liberty, emotional distress, dignitary injuries, economic damages, and other harms he suffered

because of Defendant Matthews' reckless and malicious actions. He also seeks punitive damages to punish and deter this type of conduct from occurring again.

## JURISDICTION AND VENUE

4. Plaintiff's claims are brought pursuant to 42 U.S.C. §1983 and the Constitution of the United States as well as C.R.S. §13-21-131 and Article II of the Colorado Constitution.

5. This Court has subject matter jurisdiction of the claims based on federal law pursuant to 28 U.S.C. §1331. This Court has supplemental subject matter jurisdiction of the claims based on state law pursuant to 28 U.S.C. §1367.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because all the events alleged herein occurred in the State and District of Colorado.

7. Jurisdiction supporting the Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. §1988 and C.R.S. §13-21-131(3).

## PARTIES

8. Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth herein.

9. Plaintiff Scott Carey was at all times relevant to the claims set forth herein a resident of the State of Colorado and the District of Colorado.

10. Defendant Mark Matthews was at all times relevant to the claims set forth herein a police officer employed by the Denver Police Department and acting under color of State law. The claims herein are made against Defendant Mark Matthews in his individual capacity.

## FACTUAL ALLEGATIONS

**A. The Initial Events and Police Response**

11. On Monday morning, April 25, 2022, Matthew Wiersma arrived at his business Diamond Drilling and Sawing Company ("Diamond Drilling") where he discovered that two of his company trucks were missing and that a third truck and storage shed had been broken into. The police were called to report these trucks as stolen.

12. The Diamond Drilling trucks reported stolen were Ford F-450 trucks with a cab, a separated storage compartment behind the cab for tools, and a flat bed. The trucks look like this:



13. The two missing trucks were equipped with GPS transponders, and Mr. Wiersma was able to access the signals from these GPS transponders to track their location. Using the GPS signal, Mr. Wiersma decided to try and find the stolen trucks himself.

14. Mr. Wiersma spotted one of the trucks and began to follow it in his own vehicle. The Englewood Police Department also joined Mr. Wiersma in the chase. However, the Englewood officers and Mr. Wiersma eventually lost sight of the truck they were following.

After that, Mr. Wiersma and the Englewood officers went to 3180 S. Federal Boulevard where GPS indicated the second stolen truck was located.

15. Because Diamond Drilling is located in Denver, the matter was left to the Denver Police Department ("DPD") for further investigation. DPD Officer Mark Hall was dispatched to 3180 S. Federal Blvd., where he met the Englewood officers and Mr. Wiersma, and took over from there.

16. Mr. Wiersma told Officer Hall that the two stolen trucks had been taken two days earlier, on Saturday, April 23, 2022, from a Diamond Drilling property located at 1360 S. Cherokee St. Mr. Wiersma was able to provide Officer Hall with important and specific information about the truck located at 3180 S. Federal Blvd. From speaking with Mr. Wiersma and making his own observations, Officer Hall was able to establish that the truck located at 3180 S. Federal Blvd. was (1) a 2001 white Ford F450 truck with license plate AZFB12; (2) that the dashboard had been swapped out after it was stolen from Diamond Drilling; (3) that the ignition was intact and not punched out; and (4) Mr. Wiersma had observed this specific truck being driven by a Hispanic male in his late 30s to 40s with dark black hair.

17. Mr. Carey is a white male in his 60s.

18. After meeting with Officer Hall and completing the stolen vehicle report for the truck located at 3180 S. Federal Blvd., Mr. Wiersma next went and met with DPD Officer Shane Sperry who had been dispatched to 2465 S. Downing Street where the truck from the chase was finally located unattended in a parking lot.

19. From speaking with Mr. Wiersma and making his own observations, Officer Sperry was able to establish that the truck located at 2465 S. Downing St. had a license plate of

BRGA65 and that apart from the ignition being punched out (in contrast to the other truck) there was no other damage.

20. After completing the stolen vehicle report for the truck located at 2465 S. Downing St., Officer Sperry responded to the Diamond Drilling on S. Cherokee St. where the trucks had been stolen from and where additional damage had been reported.

21. As part of his involvement, Officer Sperry requested that criminalists from the DPD Crime Lab respond to process the scene for evidence. Both of the stolen trucks found away from Diamond Drilling were driven back to Diamond Drilling on Cherokee Street and were handled by numerous other individuals prior to their examination by criminalists.

22. DPD criminalists were able to lift a total of 5 prints from two vehicles. One print was lifted from a box truck located at the Diamond Drilling lot which was damaged but never removed. Four additional prints were lifted from the truck with the replaced dashboard found at 3180 S. Federal Blvd.: one print was lifted from the driver side door of the cab and three prints were lifted from the storage compartment door on the driver's side.

23. The truck found at 2465 S. Downing St. was not processed for evidence because it had been so extensively handled by different people after being recovered.

24. Criminalists were also able to recover a CapriSun drink container with a straw, found inside the truck from 3180 S. Federal, which they sealed and booked into evidence. The container was not tested for fingerprints or DNA.

25. The print lifts were submitted to the Denver Crime Laboratory Latent Print Unit ("Print Unit") by the criminalists the same day, on April 25, 2022.

### B. Defendant Mark Matthews Follow Up Investigation

26. Defendant Detective Mark Matthews was assigned this case for follow up on April 26, 2022, the day after the initial report. On the day he was assigned, Detective Matthews reviewed the investigation completed by Officers Hall and Sperry. Detective Matthews also left a message for Mr. Wiersma requesting a call back.

27. Two days later, on April 28, 2022, Detective Matthews reviewed the investigation completed by the DPD criminalists.

28. Also on April 28, 2022, Detective Matthews reviewed the results from the Print Unit regarding the fingerprint evidence submitted by the DPD criminalists. From reviewing those results, Detective Matthews learned that the Print Unit had apparently tested different items than those submitted by the criminalists. For example, the Print Unit had apparently tested fingerprints from the vehicle the criminalists did not test or submit evidence from. Additionally, the Print Unit apparently did not test any evidence from the box truck even though the criminalists had submitted prints from it. And last, Detective Matthews learned that the Print Unit described the evidence submitted from the truck with the replaced dashboard differently than what was originally submitted by the criminalists.

29. Despite all of the discrepancies and errors Detective Matthews was aware of regarding the Print Unit results, he concluded that two of the prints submitted from truck with the replaced dashboard found at 3180 S. Federal Blvd. matched the known fingerprints of two people: the plaintiff Scott Carey and another person named Grant Misztal.

30.     However, the latent print attributed to Mr. Carey was described by the Print Unit as having been lifted from the interior of the driver side compartment door, which Detective Matthews knew was not a location where the criminalists had collected any evidence.

31.     Detective Matthews "looked up" Grant Misztal, the other fingerprint "match," and discovered that Mr. Misztal was a police cadet who had been on a ride along with Officer Hall during the initial call for service on April 25, 2022. Detective Matthews contacted Mr. Misztal, asked him questions about the print, and allowed him to write a statement explaining how his fingerprint may have innocently ended up on a stolen truck. Based on this, Mr. Misztal was eliminated as a suspect.

32.     Detective Matthews also "looked up" Mr. Carey, later noting in his affidavit that Mr. Carey had "a 28 arrest criminal record for Theft, Drugs, Assault, and Agg MVTF." Other than "look up" Mr. Carey's arrest record and seeing his photo – which did not in any way match the description provided by witnesses of the thief – Detective Matthews conducted no other follow up investigation regarding Mr. Carey.

33.     Detective Matthews also never ordered further testing of evidence (such as the Capri Sun drink with straw) or took action to clarify, reconcile, or fix the material discrepancies between the work completed by the criminalists and the Print Unit.

34.     On May 3, 2022, Mr. Wiersma confirmed in a voice mail to Detective Matthews that Scott Carey was not an employee of Diamond Drilling and did not otherwise have permission to use Diamond Drilling trucks.

35.     With the above information, and nothing more, Detective Matthews drafted a faulty probable cause affidavit asserting that there was probable cause to establish that Mr. Carey had stolen the truck with the replaced dashboard from Diamond Drilling.

36.     The probable cause affidavit submitted and sworn by Detective Matthews was sent to a criminal court judge and the District Attorney, which caused the wrongful arrest and prosecution of Mr. Carey for a crime he did not commit and for which there was no probable cause.

**C.  The Deficient Affidavit For Arrest**

37.     On May 9, 2023, Detective Matthews drafted an Affidavit and Application for Arrest Warrant ("Affidavit") for the arrest of plaintiff Scott Carey. In the Affidavit, which was signed by Detective Matthews and notarized, Detective Matthews stated under oath that the Affidavit contained the facts known to him which established probable cause to believe that Mr. Carey committed the felony crime of Aggravated Motor Vehicle Theft in the Second Degree.

38.     The Affidavit authored and sworn by Detective Matthews did not establish probable cause; rather, it contained false and/or misleading information and omitted material exculpatory facts known to Detective Matthews at the time he drafted the Affidavit.

39.     The Affidavit omits any mention of Officer Hall's investigation and the statements made by Mr. Wiersma indicating that the very truck Mr. Carey was accused of stealing was seen being driven by a Hispanic male in his 30s and 40s with dark black hair.

40.     Defendant Mathews knew that Mr. Carey was a white male in his 60s because he placed Mr. Carey's photograph, his description, and his date of birth at the top of the Affidavit.

41. The Affidavit omits any information about the police cadet Grant Misztal, and the innocent explanation Detective Matthews was able to uncover related to Mr. Misztal's fingerprints on the truck.

42. Similarly, the Affidavit makes no mention of the other fingerprints found on the vehicles that did not match Mr. Carey.

43. Furthermore, the Affidavit omits that a fingerprint found on the inside of the driver's door to the truck Mr. Carey was accused of stealing—in contrast to the storage compartment behind and separate from the driver's cab—did not match Mr. Carey.

44. The Affidavit makes no mention of the discrepancies between the evidence collected and submitted by the criminalists and the evidence allegedly tested by the Print Unit.

45. The Affidavit is misleading in its description of the truck and the location of the fingerprints. Detective Matthews knew that the location of Mr. Carey's alleged fingerprint was on the door to an outside tool storage compartment separated from and behind the passenger compartment. Yet, he purposefully obfuscated this fact to make it seem like Mr. Carey had been operating the vehicle.

46. Detective Matthews knew the truck looked like the truck depicted above, yet misleadingly and inaccurately described it in the Affidavit to make it seem like Mr. Carey had been operating the truck based on the location of his alleged fingerprint.

47. The Affidavit misrepresents Mr. Carey's criminal history by stating the number of arrest records and the names of a few crimes without providing any context or the dates associated with his arrest record. Mr. Carey is a man in his 60s who, at the time the Affidavit was

written, had not been arrested for ten years, a fact which was knowingly omitted from the Affidavit by the defendant.

48. In truth, the Affidavit asserts that there is probable cause to conclude that Mr. Carey stole the Diamond Drilling truck based on nothing more than an inaccurately described fingerprint and a misrepresented arrest record.

**D. The False Arrest, Incarceration, and Wrongful Prosecution of Scott Carey**

49. Unbeknownst to Mr. Carey, an arrest warrant was approved and signed by a judge on May 9, 2022 based on the Affidavit sworn by Defendant Matthews.

50. Mr. Carey was arrested on August 12, 2022.

51. The warrant directed that Mr. Carey's bond would be set at his first court appearance. Mr. Carey was arrested in Arapahoe County; therefore, he was first taken to the Arapahoe County Jail.

52. Mr. Carey was held in the Arapahoe County Jail for 4 days without bond.

53. On August 16, 2022, Mr. Carrey was transferred to the custody of the Denver Sheriff. He was held in the Denver Detention Center until August 17, 2022.

54. While Mr. Carey was in jail for six days without bond, he was unable to work. He also suffered from a lack of sufficient water and a lack of medication related to his kidney disease.

55. The criminal prosecution against Mr. Carey lasted for over 5 months. The case initiated against him by Detective Matthews was dismissed entirely on January 30, 2023.

11

56. Mr. Carey suffered damages from being arrested, charged, and prosecuted for a felony crime that he did not commit based on the faulty Affidavit written and sworn by Detective Matthews.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourth Amendment**
**C.R.S. § 13-21-131, Colo. Const. Art. II, §7**
*Unlawful Arrest*

57. Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth herein.

58. Defendant Detective Mark Matthews authored a sworn Affidavit for an arrest warrant on May 9, 2022, alleging that there was probable cause to believe that the plaintiff Scott Carey had committed the felony crime of aggravated motor vehicle theft, a class 6 felony in Colorado in violation of C.R.S. §18-4-409(4)(b).

59. In the Affidavit, defendant Matthews asserted, without more, that there was probable cause to believe Mr. Carey had stolen a truck based upon a misleading characterization of Mr. Carey's arrest record and an inaccurate description of a fingerprint which was found on the door to a storage compartment outside, behind, and separate from the driver's cab.

60. The Affidavit on its face did not establish probable cause.

61. In addition, the Affidavit omitted exculpatory facts and contained misleading facts as explained above.

62. An arrest warrant was issued based on the Affidavit authored by defendant Matthews.

63. Mr. Carey was later arrested because of the warrant issued based on defendant Matthews' Affidavit.

12

64. Mr. Carey was arrested without probable cause because the warrant he was arrested for did not establish probable cause.

65. Defendant Matthews' actions caused Mr. Carey to be arrested without probable cause, which deprived Mr. Carey of rights, privileges, liberties, and immunities secured by the United States Constitution and the Colorado Constitution.

66. Mr. Carey suffered damages as a result of defendant Matthews' actions in causing Mr. Carey's arrest without probable cause.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1983, Fourth Amendment**
**C.R.S. § 13-21-131, Colo. Const. Art. II, §7**
*Franks Claim*

67. Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth herein.

68. On May 9, 2022, defendant Mark Mathews authored and swore an Affidavit asserting that there was probable cause to believe plaintiff Scott Carey had committed the felony crime of aggravated motor vehicle theft, a class 6 felony in Colorado in violation of C.R.S. §18-4-409(4)(b).

69. The Affidavit authored and sworn by Detective Matthews did not establish probable cause, and defendant Matthews knowingly included false or misleading information and knowingly omitted material exculpatory facts known to him at the time he drafted the Affidavit.

70. The Affidavit omits any mention of Officer Hall and the statements by Mr. Wiersma indicating that the very truck Mr. Carey was accused of stealing was seen being driven

by a Hispanic male in his 30s and 40s with dark black hair. Defendant Matthews omitted this information while including a description of Mr. Carey—a white male in his 60s.

71. The Affidavit omits any information about the police cadet Grant Misztal, and the innocent explanation Detective Matthews was able to uncover related to Mr. Misztal's fingerprints on the stolen truck.

72. The Affidavit makes no mention of the discrepancies between the evidence collected and submitted according to the criminalists and the way that evidence was described by the Print Unit, including evidence allegedly tested that was never even submitted.

73. The Affidavit omits that a fingerprint was lifted from the driver's door of the truck Mr. Carey was accused of stealing—in contrast to the storage compartment behind and separate from the driver's cab—which did not match Mr. Carey.

74. The Affidavit misrepresented the location of Mr. Carey's alleged fingerprint because it does not make it clear that this fingerprint was allegedly found on a door to a tool storage compartment separate from and behind the passenger area.

75. The Affidavit misrepresents Mr. Carey's criminal history by merely stating the number of arrest records and the names of a few crimes without context or dates of those arrests. Detective Matthews knew that Mr. Carey is a man in his 60s who, at the time the Affidavit was written, had not been arrested for ten years.

76. The Affidavit asserted criminal liability based on nothing more than the alleged presence of Mr. Carey's fingerprint and his arrest record. The affidavit on its face does not establish probable case.

77. However, if the false and/or misleading information is excluded from the Affidavit, and the exculpatory information known to defendant Matthews at the time of drafting is included, the Affidavit absolutely does not establish probable cause.

78. Mr. Carey suffered damages in that he was arrested, spent six (6) days in jail, and was prosecuted for several months based upon the false and misleading Affidavit authored by defendant Matthews.

79. Defendant Matthews' actions in drafting an Affidavit that failed to establish probable cause and which knowingly omitted material exculpatory information and knowingly included false and/or misleading facts, deprived Mr. Carey of rights, privileges, liberties, and immunities secured by the United States Constitution and the Colorado Constitution.

### THIRD CLAIM FOR RELIEF
### 42 U.S.C. § 1983, Fourth Amendment
### C.R.S. § 13-21-131, Colo. Const. Art. II, §7
*Wrongful Prosecution*

80. Plaintiff incorporates all preceding paragraphs of this Complaint as if set forth herein.

81. On May 9, 2022, defendant Mark Mathews authored and swore an Affidavit for probable cause which initiated a prosecution and confinement of plaintiff Scott Carey for the felony crime of aggravated motor vehicle theft, a class 6 felony in Colorado in violation of C.R.S. §18-4-409(4)(b).

82. The criminal case initiated by defendant Matthews was dismissed in its entirety on January 30, 2023.

83. There was no probable cause for the charges against Mr. Carey.

84. In initiating the criminal prosecution against Mr. Carey, and in the drafting of the Affidavit which initiated the prosecution, defendant Matthews acted with malice and/or reckless disregard for the truth.

85. Plaintiff Scott Carey suffered damages as a result of defendant Matthews actions in initiating a prosecution against him with malice and without probable cause.

86. Defendant Matthews' actions deprived Mr. Carey of rights, privileges, liberties, and immunities secured by the United States Constitution and the Colorado Constitution.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant for:

1. compensatory damages;

2. punitive damages, as allowed by law;

3. interest as allowed by law;

4. costs, including expert witness fees;

5. reasonable attorney fees, as allowed by statute or as otherwise allowed by law; and,

6. any other and further relief that this Court shall deem just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.**

Respectfully submitted this 28th day of July, 2023.

Civil Rights Litigation Group, PLLC

/s/ Luke W. McConnell
s/ Raymond K. Bryant
Luke W. McConnell
Raymond K. Bryant
1543 Champa St., Suite 400
Denver, CO 80202

16

Phone:  720-515-6165
Fax:  720-465-1975
raymond@rightslitigation.com
luke@rightslitigation.com

*Attorneys for Plaintiff*

Plaintiff's Address:
c/o Counsel
1543 Champa Street, Suite 400
Denver, CO 80202

17